IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LYNN L. TAVENNER,

    **Trustee,**

v.                                                                         Civil Action No. 3:17cv503

CHESAPEAKE CONSTRUCTION
GROUP, LLC, *et al.*,

    **Movants.**

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Withdraw the Reference filed by Defendants Chesapeake Construction Group, LLC, David Oelrich, Lawrence Oelrich, a/k/a Larry Oelrich, and Matt Oelrich (collectively, "Defendants"). (ECF No. 1.) Defendants move to withdraw the four-count adversary complaint initiated by Trustee Lynn Tavenner (the "Trustee") in the underlying bankruptcy action. Trustee opposes the withdrawal. The Court exercises jurisdiction pursuant to 28 U.S.C. § 157(d).[1]

The parties fully briefed the matter in the Bankruptcy Court, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The matter is ripe for disposition. For the reasons that follow, the Court will deny the Motion to Withdraw the Reference and remand this matter to the Bankruptcy Court.

---

    [1] Section 157(d) provides, in relevant part, that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

## I. Factual and Procedural Background[2]

On March 24, 2014, five individuals instituted an involuntary bankruptcy petition against James Ashby Moncure (the "Debtor") under Chapter 7 of the Bankruptcy Code.[3] The United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") thereafter appointed the Trustee. On March 25, 2016, the Trustee initiated an adversary action against Defendants by filing a Complaint in the Bankruptcy Court (the "Trustee Complaint"). The Trustee Complaint asserted four causes of action: (1) "Turnover and Accounting"; (2) "Preferential Transfers"; (3) "Fraudulent Transfers"; and, (4) "Fraudulent Transfer." (Trustee Compl. ¶¶ 27–54.) The Trustee alleged that the Debtor had made nine transfers to Defendants within the two years before the petition was filed, in the total amount of $433,000, at a time when the Debtor's liabilities were greater than his assets, and that the bankruptcy estate was therefore entitled to recover that money.

The Trustee asserted the following claims:

**Count One:** **Turnover and Accounting (the "Turnover Claim")[4]** – All of the Transfers constitute property of the bankruptcy estate.

**Count Two:** **Preferential Transfers (the "Preference Claim")** – Certain transfers were made within 90 days prior to the bankruptcy petition, for the benefit of the Defendants, while the Debtor was insolvent, and when the Defendants were creditors of the Debtor.

---

[2] The Court recounts only the factual and procedural background relevant to the instant motion.

[3] A bankruptcy under Chapter 7 governs the liquidation, rather than reorganization, of a debtor's assets.

[4] The Turnover Claim is brought under 11 U.S.C. § 548, a law allowing a bankruptcy trustee to recover property for the bankruptcy estate. The Bankruptcy Code defines a turnover action as a "core proceeding" which bankruptcy courts may "hear and determine . . . and [in which they] may enter appropriate orders and judgments." 11 U.S.C. § 157(b)(1)(E).

**Count Three: Fraudulent Transfers (the "548(a)(1)(A) Fraudulent Transfer Claim")** – The Debtor made certain transfers within the two years prior to the bankruptcy petition with the actual intent to hinder, delay, and defraud some of his debtors.

**Count Four: Fraudulent Transfer (the "548(a)(1)(B) Fraudulent Transfer Claim")**[5] – The Debtor made certain transfers within the two years prior to the bankruptcy petition, at a time when he was insolvent, for less than a reasonably equivalent value in exchange, and intending to incur debts beyond his ability to pay.

The Trustee averred that she could void or recover the transferred amounts pursuant to 11 U.S.C. § 548(a)(1)(A) and (B),[6] § 547(b),[7] and recover the money for the bankruptcy estate pursuant to 11 U.S.C. §§ 550[8] and 551.[9]

---

[5] Both the 548(a)(1)(A) Fraudulent Transfer Claim and the 548(a)(1)(B) Fraudulent Transfer Claim are brought under 11 U.S.C. § 542, a law allowing a bankruptcy trustee to void pre-petition transfers in certain circumstances. The Bankruptcy Code defines a fraudulent transfer claim as a "core proceeding" which bankruptcy courts may "hear and determine . . . and [in which they] may enter appropriate orders and judgments." 11 U.S.C. § 157(b)(1)(H).

[6] Section 548(a)(1)(A) & (B) allow a trustee to "avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily [under certain circumstances]." 11 U.S.C. § 548(a)(1)(A) & (B).

[7] Section 547(b) allows a trustee to "avoid any transfer of an interest of the debtor in property [under certain circumstances]." 11 U.S.C. § 547(b).

[8] Section 550 provides in part that

to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made . . .

11 U.S.C. § 550(a)(1).

[9] Section 551 provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

Defendants moved to dismiss the Trustee Complaint (the "First Motion to Dismiss"), and on March 15, 2017, the Bankruptcy Court held a hearing on the First Motion to Dismiss. During the hearing, the Bankruptcy Court announced its intent to grant the Motion to Dismiss in part, deny it in part, and grant the Trustee leave to amend. The parties also discussed discovery, pretrial procedures, and trial dates. On March 24, 2017, the Bankruptcy Court entered an Order granting in part and denying in part the First Motion to Dismiss, and granting the Trustee leave to amend. The Bankruptcy Court ordered the Trustee to file an Amended Complaint within fourteen days and ordered Defendants to file a responsive pleading within ten days after that.

Two days earlier, on March 22, 2017, the Bankruptcy Court entered a Pretrial Order governing discovery, dispositive motions, and pretrial filings. The Pretrial Order also ordered:

> Any party not consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to Withdraw the Reference or for other appropriate relief within 30 days of the entry of this Scheduling Order, and shall promptly set the matter for hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy Judge.

(Pretrial O. ¶ 13.)

The Trustee filed an Amended Complaint on April 7, 2017 (the "Trustee Amended Complaint"), and Defendants thereafter filed a Partial Motion to Dismiss (the "Second Motion to Dismiss"). The Trustee opposed the Second Motion to Dismiss, and Defendants replied. Defendants never set the Second Motion to Dismiss for a hearing. On May 24, 2017, the Trustee filed a Motion to Deny Jury Demand, moving the Bankruptcy Court to deny Defendants' demand for a jury trial. Defendants opposed, and the Court held a hearing on June 7, 2017. At the June 7, 2017 hearing, the Bankruptcy Court denied the Second Motion to Dismiss and granted the Motion to Deny Jury Demand. On June 16, 2017, the Bankruptcy Court entered an Order denying the Second Motion to Dismiss and granting the Motion to Deny Jury Demand (the "June 16, 2017 Order").

In the June 16, 2017 Order, the Bankruptcy Court "adopted and incorporated" the Proposed Findings of Fact and Conclusions of Law (the "Findings of Fact") filed by the Trustee on June 16, 2017. (June 16, 2017 O. 1.) The Findings of Fact state that Defendants

> did not timely move to withdraw the reference, nor did [they] seek other appropriate relief. [They] set nothing down for hearing after entry of the Pre-Trial Order. [They] took no affirmative action as is required by the Court's Pre-Trial Order. Thus, [they have] *consented to the entry of final orders by [the Bankruptcy] Court. [They have] consented to [the Bankruptcy] Court hearing all matters.*

(Findings of Fact 9 (emphasis added).)

On June 12, 2017, Defendants filed the Motion to Withdraw.

## **II. Analysis**

### A. **Jurisdiction of the Bankruptcy Courts**

Pursuant to 28 U.S.C. § 1334, the district courts have "original and exclusive jurisdiction of all cases" under the Bankruptcy Code. 28 U.S.C. § 1334(a). District courts may refer all bankruptcy matters to bankruptcy judges, 28 U.S.C. § 157(a),[10] as this District has done since 1984. *See In the Matter of: The Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D. Va. August 15, 1984) (Order).

In general, bankruptcy courts oversee the matters before them in two different ways. Under 28 U.S.C. § 157(b), "[b]ankruptcy judges may *hear and determine all cases under title 11 and all core proceedings* arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1) (emphasis added). Thus, in bankruptcy cases and in so-called "core proceedings," bankruptcy courts have jurisdiction to both *hear* and *determine* the case. *See id.* Under

---

[10] "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

5

28 U.S.C. § 157(c) when a proceeding before the bankruptcy court is "non-core," but "otherwise related to a case under title 11," a bankruptcy court has the authority to *hear* but not *determine* the proceeding. In those cases, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court," which considers the bankruptcy court's recommendations, and enters the final orders and judgments.[11] 28 U.S.C. § 157(c)(1).

Given the jurisdictional limitation on bankruptcy courts, the determination of whether a matter is "core" or "non-core" becomes important. Section 157(b)(2)[12] sets forth a list of so-

---

[11] If any party objects to the bankruptcy court's proposed findings and conclusions, the district court reviews those matters *de novo*. 28 U.S.C. § 157(c)(1).

[12] Statutory core proceedings include, but are not limited to—
  (A) matters concerning the administration of the estate;
  (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
  (C) counterclaims by the estate against persons filing claims against the estate;
  (D) orders in respect to obtaining credit;
  (E) orders to turn over property of the estate;
  (F) proceedings to determine, avoid, or recover preferences;
  (G) motions to terminate, annul, or modify the automatic stay;
  (H) proceedings to determine, avoid, or recover fraudulent conveyances;
  (I) determinations as to the dischargeability of particular debts;
  (J) objections to discharges;
  (K) determinations of the validity, extent, or priority of liens;
  (L) confirmations of plans;
  (M) orders approving the use or lease of property, including the use of cash collateral;

called "statutory core proceedings." This non-exhaustive list provides guidance about whether a proceeding is core, but is not dispositive. Ultimately, in order to deem a proceeding "core" or "non-core," a "[c]ourt [should] identify the nature of the cause of action itself, and whether the action invokes a right under title 11 or that arose in a case under title 11." *Chesapeake Trust v. Chesapeake Bay Enters., Inc.*, No. 3:13cv344, 2014 WL 202028, at *3 (E.D. Va. Jan. 17, 2014) (citing *Corliss Moore & Assoc., LLC v. Credit Control Servs., Inc.*, 497 B.R. 219, 224 (E.D. Va. 2013)).

A proceeding "arising in" a case under title 11 "is a proceeding that, even if not specifically provided for in the Bankruptcy Code, can take place only in the context of a case under title 11," including "various matters affecting administration of a bankruptcy estate." *In re Gladstone*, 513 B.R. 149, 153 (Bankr. S.D. Fl. 2014). In making the core or non-core determination, the Court evaluates whether the claim seeks relief that would "require[] the Court to recognize whether something is or is not property of a debtor to be administered as part of the estate." *Id.* If the relief sought in the claim requires that the Court make such a determination, "the matter 'arises in' a title 11 case and 'arises under' title 11 within the meaning of 28 U.S.C. § 1334(b)." *Id.* In sum, "[t]he Court looks beyond the label applied to the claim to [the claim's] substance" to determine whether a claim is core or non-core. *Id.* Thus, a proceeding could be designated "core" under § 157(b), but, because of the nature of the cause of action, not constitute

---

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and[,]

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

a "core proceeding." Proceedings of this nature have been referred to as "constitutionally non-core proceedings."

However, even the presence of non-core claims in an adversary proceeding does not mean "that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, [and] conducting pre-trial conferences." *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993). They may instead fall into the category of claims that a bankruptcy court could hear but not determine. And, of course, if all parties consent to the bankruptcy court's jurisdiction, bankruptcy courts may hear all matters and enter final judgment in even non-core claims. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1942 (2015) ("[L]itigants may validly consent to adjudication by bankruptcy courts.").

## B.     **Withdrawal of the Reference**

As to all bankruptcy proceedings, whether core or non-core, the district court retains the power to "withdraw . . . any proceeding referred" to the bankruptcy court, and decide the matter itself. 28 U.S.C. § 157(d). Bankruptcy law provides two avenues by which a district court can order a case withdrawn from the bankruptcy court: mandatory withdrawal or permissive withdrawal. 28 U.S.C. §157(d).[13] A party who seeks district court determination of a matter filed in an underlying bankruptcy action may, as Defendants have here, file a motion to withdraw

---

[13] Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

8

the reference. The burden of demonstrating the propriety of withdrawal—whether mandatory or discretionary—rests with the movant. *See In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 677 (E.D. Va. 2003).

### 1. Threshold Consideration: Implied Consent

Disagreement about whether Defendants impliedly consented to adjudication of the Trustee Amended Complaint by the Bankruptcy Court consumes much of the parties' briefing. The Trustee argues that Defendants have impliedly consented to the Bankruptcy Court's jurisdiction because they failed to move to withdraw the reference within the thirty days dictated by the Court's Pretrial Order. Defendants argue vehemently against a finding of implied consent. Defendants highlight the language in the Pretrial Order directing parties who do not consent to bankruptcy jurisdiction to "file a Motion to Withdraw the Reference or *for other appropriate relief*" within thirty days of the Pretrial Order's entry. (Pretrial O. ¶ 13 (emphasis added).) Defendants assert that they "endeavored to comply with [the] Pretrial Order by filing **TWO** separate written demands for a jury trial and by filing a motion to dismiss the Trustee's remaining claims within [thirty] days of the Pretrial Order." (Defs.' Reply 9.) Defendants contend that they therefore did not knowingly or voluntarily consent to bankruptcy court jurisdiction.

Despite Defendants' arguments to the contrary, the Bankruptcy Court has already ruled that Defendants "consented to the entry of final orders by [the Bankruptcy] Court. [They have] consented to [the Bankruptcy] Court hearing all matters." (Findings of Fact 9.) A procedure exists for litigants in a bankruptcy court to appeal the bankruptcy judge's rulings, but moving to withdraw the reference is not that procedure. As the case stands before this Court, the

Bankruptcy Court has ruled that Defendants have consented to the Bankruptcy Court hearing all matters. This Court declines to disturb that ruling.[14]

Notwithstanding Defendants' consent, this Court retains the authority to withdraw the reference for cause if it finds that either mandatory or discretionary withdrawal is appropriate. However, considering all the factors, withdrawal of the reference under either standard is not merited.

### 2. Mandatory Withdrawal

#### a. Legal Standard

Mandatory withdrawal occurs when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Although the United States Court of Appeals for the Fourth Circuit has never addressed how a court should interpret the statutory language, a majority of courts have determined "that § 157(d)'s [mandatory withdrawal] clause applies only when a proceeding requires 'substantial and material' consideration of non-bankruptcy federal law." *Eli Glob., LLC v. Univ. Directories, LLC*, 532 B.R. 249, 251 (M.D.N.C. 2015) (internal citations omitted). Under that standard, "mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the

---

[14] The Court also notes that by litigating this case in the bankruptcy court for more than two months and only moving to withdraw the reference afterward, Defendants, at the very least, risked disrupting the certainty of the proceedings in the Bankruptcy Court. It defies reason that a party could move to withdraw the reference at any time in an adversary proceeding before the Bankruptcy Court, and justify a potentially late motion to do so by asserting that it had "*endeavored* to comply" with the Bankruptcy Court's orders. Litigants are tasked with knowing the laws and procedures of the courts in which they litigate. In order to ensure timely and efficient resolution of the matters before the courts, litigants must comply (not just *endeavor* to comply) with those rules. Failure to do so risks forfeiting relief to which the litigant might otherwise be entitled.

non-title 11 law." *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (holding that withdrawal of the reference is not mandatory merely because a case "involves the routine application of a non-Bankruptcy Code federal statute"). Even when mandatory withdrawal is implicated, however, a litigant may consent to adjudication by a bankruptcy court expressly or impliedly, so long as that consent is knowing and voluntary. *Sharif*, 135 S. Ct. at 1948.

### b. Defendants Fail to Establish that Mandatory Withdrawal Applies

Defendants argue, to the extent this Court can discern, that this proceeding implicates mandatory withdrawal. In sum, Defendants seem to premise their argument on the assertion that, as non-creditors, "this fraudulent conveyance action does not arise as part of the process of allowance and disallowance of claims[,] and is not integral to the restructuring of debtor-creditor relations," ant therefore "can be adjudicated only by an Article III court," and not the Bankruptcy Court.[15] (Mot. Withdraw Ref. 10 (internal citation and quotation marks omitted).)

Defendants' argument clearly fails. They cite nothing indicating that resolving any of the claims would "require[] 'substantial and material' consideration of non-bankruptcy federal law." *Eli Glob., LLC*, 532 B.R. at 251. Indeed, it seems Defendants would have little to cite. All

---

[15] Defendants appear to conflate the standard for mandatory withdrawal of the reference under § 157(d) with the Bankruptcy Court's constitutional authority to enter final orders in a case. As the United States Supreme Court held in *Stern v. Marshall*, however, whether the Constitution allows a Bankruptcy Court to enter final judgment on an adversary claim is a separate question from the dictates of 28 U.S.C. § 157. 564 U.S. 462, 482 (2011) ("Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment . . . Article III of the Constitution does not."). Therefore, withdrawal of the reference may be necessary to comply with the Constitution, but still not implicate "laws of the United States regulating organizations or activities affecting interstate commerce" such that mandatory withdrawal of the reference under § 157(d) is necessary.

Moreover, given the Bankruptcy Court's ruling that Defendants have impliedly consented to its jurisdiction, no concern exists about whether the Bankruptcy Court may enter final judgment in this case. *See, e.g., Sharif*, 135 S. Ct. at 1942 ("[L]itigants may validly consent to adjudication by bankruptcy courts.").

claims in the Trustee Amended Complaint rely largely, if not entirely, on bankruptcy law. All claims are brought under sections of Chapter 11 which enable a trustee to recover property for the bankruptcy estate. The Turnover Claim is brought under 11 U.S.C. § 548, the Preference Claim is brought under 11 U.S.C. § 547(b) (both of which are laws allowing a bankruptcy trustee to recover property for the bankruptcy estate), and both the Fraudulent Transfer Claims are brought under 11 U.S.C. § 542 (a law allowing a bankruptcy trustee to void pre-petition transfers in certain circumstances). Accordingly, Defendants have failed to establish that mandatory withdrawal is appropriate in this situation.

### 3. <u>Discretionary Withdrawal</u>

Bankruptcy law also allows permissive, or discretionary, withdrawal but does so only "for cause shown." 28 U.S.C. § 157(d). The Bankruptcy Code does not define "cause" in the context of discretionary withdrawal. However, courts in this district weigh six factors to assess whether the movant has established cause for withdrawing the reference. *U.S. Airways*, 296 B.R. at 681.

> These factors include: (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial.

*Id.*; *see also Chesapeake Trust*, 2014 WL 202028, at *4 (discussing same six factors). Although some courts treat the core/non-core factor as a threshold question, "[t]he better view is that discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction." *U.S. Airways*, 296 B.R. at 682.

## C. Defendants Fail to Establish Cause to Withdraw the Reference

Upon review of all the factors presented in this case, this Court concludes that Defendants cannot demonstrate cause to withdraw the reference. Defendants rely largely on an asserted right to trial by jury and their contention that the Bankruptcy Court lacks the authority to enter a final judgment in this case. In grounding their arguments on these claims, however, Defendants ignore the findings of the Bankruptcy Court that they have: (1) waived their right to a jury trial; and, (2) consented to the Bankruptcy Court hearing and deciding all matters in the Trustee Amended Complaint. As the Court noted earlier, this motion to withdraw the reference is not the appropriate avenue by which to challenge the Bankruptcy Court's rulings. Accordingly, all factors weigh against withdrawing the reference.

### 1. The Core/Non-Core Nature of the Trustee Amended Complaint Does Not Weigh in Favor of Withdrawing the Reference

The core/non-core factor, although not dispositive, carries profound weight among the *U.S. Airways* factors because "it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). Classifying a proceeding as either core or non-core often determines whether a bankruptcy court can enter final orders or must submit proposed findings of fact and conclusions of law to a district court, which might them have to review the matters *de novo*. *See* 28 U.S.C. § 157(c)(1). Thus, when a proceeding is non-core, a district court might "conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court." *Orion*, 4 F.3d at 1101.

Given the Bankruptcy Court's finding that Defendants have consented to final adjudication of all matters in the Bankruptcy Court, the Court sees no judicial efficiency gains in withdrawing the reference. No need would exist in this case for the Bankruptcy Court to enter proposed findings of fact and conclusions of law—it has found that Defendants consented to

entry of judgment by the Bankruptcy Court. Accordingly, this factor does not weigh in favor of withdrawing the reference.[16]

### 2. Uniformity, Judicial Economy, and Efficiency Do Not Weigh in Favor of Withdrawing the Reference

Regarding the other *U.S. Airways* factors, Defendants contend that uniformity, judicial economy, and efficiency favor withdrawing the reference because, "[i]t is possible that the case cannot be decided by a summary judgment motion[,] and the Court should withdraw the reference from the Bankruptcy Court at this time to advance the case towards conclusion by jury trial." (Mot. Withdraw 13.) Defendants further contend that, because the case involves non-core matters, the Bankruptcy Court would have to "submit its proposed findings of fact and conclusions of law to the district court," which would then review *de novo* the Bankruptcy Court's conclusions before entering a final judgment. (*Id.* (internal quotations and citation omitted).) The Trustee counters that the Trustee Amended Complaint "involves fraudulent and

---

[16] The Court notes that the Supreme Court's decisions in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), and *Stern v. Marshall*, 564 U.S. 462 (2011), could support a conclusion that both Fraudulent Conveyance Claims are constitutionally non-core proceeding in which the Bankruptcy Court could not, absent Defendants' consent, enter a final judgment. *Granfinanciera* addressed whether a non-creditor had the right to a jury trial on a fraudulent conveyance claim brought by the trustee. 492 U.S. at 36. The Supreme Court explained that a fraudulent conveyance action, although a statutory core proceeding, is akin to a common law contract suit, meaning that the right to a jury trial would attach. *Id.* at 54–56, 64–65. In *Stern*, the Supreme Court confirmed the *Granfinanciera* view in its discussion of actions "at common law that simply attempt[] to augment the bankruptcy estate [which are] the very type of claim that we held in . . . *Granfinanciera* must be decided by an Article III court." 131 S. Ct. at 2616. Accordingly, based on *Granfinanciera* and *Stern*, bankruptcy courts likely lack authority to enter final judgments in fraudulent conveyance claims brought against non-creditors, absent the consent of the parties. Given the Bankruptcy Court's finding that Defendants have consented to its jurisdiction, this concern lacks persuasive value.

The denial of the Motion to Withdraw does not prevent the Bankruptcy Court from reconsidering its finding of consent and deciding to issue proposed findings of fact and conclusions of law as part of a remedy. But Defendants functionally seek to appeal the Bankruptcy Court's rulings prematurely, and the Court declines to undo those rulings in this context.

preferential transfers under the Bankruptcy Code and should be heard by the Bankruptcy Court."
(Trustee Resp. 14.)

Again, given the Bankruptcy Court's findings that Defendants have consented to it entering final orders and waived his right to a jury trial, Defendants' arguments carry little persuasive weight. But the remaining *U.S. Airways* factors would counsel denial of the Motion to Withdraw in any event. The Bankruptcy Court has presided over the underlying action since 2014. The Bankruptcy Court's resulting intimate knowledge about the Debtor's finances and the circumstances leading to the Bankruptcy petition means that the efficient use of the creditor and debtor resources favors denying the Motion to Withdraw. As to judicial efficiency and uniformity, the Bankruptcy Court already has heard and ruled on several motions in this adversary action, issued a Pretrial Order, and commenced discovery. Given these considerations, uniformity, judicial economy, and efficiency all weigh against withdrawing the reference.

### 3. No Need to Preserve the Right to a Jury Trial Exists in this Case

Defendants argue passionately that they are constitutionally entitled to a jury trial in this case. They contend that they have "filed two written demands for a jury trial on all issues triable," and have not waived their right to a jury. (Mot. Withdraw 17.) The Trustee counters that "the Bankruptcy Court has already found that said right does not exist" because Defendants "waived their right to a jury trial by failing timely to follow procedural requirements." (Trustee Resp. 16.)

As discussed earlier, Defendants misapprehend the procedural posture of this case. The Bankruptcy Court has already heard and decided Defendants' arguments that they did not waive their right to a jury trial. The Bankruptcy Court found that they had waived that right, and this

15

Court will not disturb that finding. Accordingly, no need to preserve the right to a jury trial exists, and this factor does not weigh in favor of withdrawing the reference.[17]

### III. Conclusion

For the foregoing reasons, the Court will deny the Motion to Withdraw the Reference. (ECF No. 1.) The Court will remand this case to the Bankruptcy Court. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 3/27/2018
Richmond, Virginia

---

[17] The considerations of forum shopping are not relevant to the motion before the Court.